Mr. Jones suffered harm when the VA ignored the law to strip away benefits all while he was battling cancer. This case is about clear and unmistakable error, but not the normal Q type of case where a veteran is asking to revise a denial. In this case, if I understand it right, the benefits were awarded based on a determination that he had in fact set foot in or served in Vietnam, and the government determined afterwards that they had relied on a postal code, which was inaccurate when they made that determination. The postal code used to be a postal code for Vietnam, but then it was changed in the 1970s to be a postal code for Hawaii, and they failed to appreciate that. So his service was actually in Hawaii during that period, not in Vietnam. Is that accurate? Chief, actually, it's accurate up to a point. So what happened is he went to Vietnam. He spent the night. I'm not asking about whether he went to Vietnam or not spent the night. I'm asking the question about the postal code. The postal code, what happened was the postal code switched from Vietnam sometime around 1973 to a postal code in Hawaii in 1974. Okay, but maybe be more succinct. His service records indicate that he served at that postal code during a certain period of time, but that was his service in Hawaii, not service in Vietnam. Is that correct? Right. Would you mind having someone close the exterior doors? There are people walking back and forth. Thank you. Right, but the postal code could have never been the basis for the green. Okay, again, that's not what I asked you. I asked you, did he serve in Hawaii during the period of time where that postal code is reflected in his military service records? In 1974, he was in Hawaii. So you're not challenging the basic predicate that there was a mistake made, they misunderstood the code. That was the basis for them awarding him the benefits in the first instance, and then when they found their error, they severed the benefits, right? Is that a fair assessment of what happened? Your Honor, we say that it wasn't just the postal code. He had his testimony that he submitted with his claim saying that he went... But there's nothing in the record that shows that that was actually even considered. I mean, when you look at the decision, it was all based upon his records and his STRs based on the postal code. Wasn't that correct? Your Honor, under the presumption of regularity, they would have had to have considered his statement because it was part of the claim. And if you look at the evidence that's listed on the claim, on the decision itself, it says STR to verify Vietnam service, and then it also says his claim. And the claim, they would have never even looked to verify... But there's nothing in the decision that indicates they gave credit or anything to his declaration. The original decision has very little. It doesn't say anything about an APO code. It doesn't say anything about his statement. Are you disputing, therefore, is the basis for your appeal here? Are you disputing that they made the decision erroneously based on the erroneous reading of the code? Is that an issue here? No, Your Honor. We're not disputing that there was an erroneous code. But the question is, if we get rid of the erroneous code, whether there was still a basis to grant his original claim in 2012. And there was. It was his testimony. Well, the testimony you're talking about of 2012. Yes, Your Honor. And then there's the evidence in the record that there's a 1990 medical record that shows where he says he had no exposure, correct? Yes, Your Honor. And then in the NOG, which was part of this proceeding, he talked about being smuggled in. Is that when he talked about smuggled in? Or at some point, he also said that he didn't go to Vietnam, but he just was exposed to some of the equipment that had been in Vietnam. And that was his exposure to Asian oil, right? So are you complaining about not considering all of the other stuff or just the 2012 statement? We are complaining that the court had to, the 2012 court had to have considered the statement and his testimony to make the determination that he was service-connected. Then, and they also included the APO code. Then they came back later and said, oh, the APO code is wrong. So the question is whether he still had a basis to be granted service connection based on his testimony and all of the different evaluation reports that showed that he was credible. What is the standard of review for that? What are we looking at right now? How do we judge whether or not his testimony was sufficient? Because it's a severance case, it's now, the burden is now on the VA and the government. So for the standard, they have to rebut his testimony. They can't just question it. Q is much higher, especially in a severance case. Much higher is not a standard. No, I'm sorry. It's okay. It has to be clearly an unmistakable error. And they have to, they can't just rebut, they have to rebut what he said. They can't just, they can't just weigh it again. Do they have to rebut every single possible piece of evidence? Because here's what I'm thinking. I'm thinking initially, they didn't really pay attention to his declaration. I mean, we don't know for sure what happened, but just go with me, hypothetically. They didn't pay attention to his declaration because his service records on their face indicated he was in Vietnam. So they just accepted it. Once the service records, wait, wait a minute. The same time period he says he's in Vietnam, he was actually not in Vietnam. He was in Hawaii. What, wait a minute. Now suddenly it casts doubt on his claim. And now they look at his actual claim and they say, oh wait, there are all kinds of problems with this. This is not credible. And that's what they did in fact conclude ultimately, that it wasn't credible. His assertion that he was smuggled onto a plane or smuggled himself onto a plane and slept on a pool table for one night in Vietnam. He somehow smuggled himself on a military aircraft to go to Vietnam, was there for one night, told them he wanted to serve. They said no. They put him presumably on a military aircraft back to wherever he was supposed to go. There exists no records to substantiate any of this in his service records or elsewhere. And the government said this is just sort of too crazy and unsubstantiated. And the crazy part isn't the assertion. The crazy part is that it would be substantiated somewhere in something if it actually happened. There are too many moving pieces. Whether he showed up in Vietnam, there would be some record from the military indicating he showed up. Whether he was put back on the plane, even if somehow he smuggled himself on like in the plane to Vietnam on a military aircraft, which seems impossible to us in this day and age, but maybe not impossible back then. But even if he did, there would be some evidence because then somebody's got to pay to fly him back. You know, there's got to be some evidence somewhere. And that's what they said is crazy. That if his story had any truth to it, there would be some documentary evidence somewhere in his service record indicating this. And in any event, is it within our purview to second guess those fact findings? It is. What's the standard for that though? What's our standard review on those factual findings if he's not credible? Again, it has to go under the clear and unmistakable evidence standard. And I just wanted to clear up something about the APO code. So the APO code could have never have been the basis of this grant in the beginning because the APO code in his service treatment records is from 1974. He went to Vietnam in 1970. So those are two distinct separate times. And he wouldn't have been AWOL because he was on his leave when he went to Vietnam. And they just escorted him back onto a plane that was coming back, that was returning people from Vietnam. So it's not unbelievable that there would have been some kind of record. And then he made it back to Fort Lewis to make it to his next duty assignment before he had to be there. I don't understand the first point you made about the APO being of 1974. You're not suggesting, I mean, there's no dispute, right, that he was stationed in Hawaii and the mistake was made initially by construing that as service in Vietnam rather than service in Hawaii. Your Honor, the problem is that the code that the VA is pointing to is from 1974. And it's just a set of numbers that look like a zip code and that was assigned to Hawaii in 1974. He said he went to Vietnam in 1970. So there would be nothing in his record since he only spent one night there to show that he would have an APO code. But what the Chief had asked, there seems like there would be some objective evidence somewhere because he's AWOL or, I mean, there's no service record whatsoever that he ever made that trip. Yes, Your Honor, there is no tangible evidence, but I mean, there is no contemporaneous record. But isn't that appropriate for them to consider all that in deciding whether he's credible or not? Right, but they aren't looking for a basis for denial. They have to look at the 2012 facts and see if there was still a basis for a grant. They flipped the standard because it's a severance case. They're used to the normal case. But they cited the standard correctly. Did they not in the opinion? Right, but that's not what they did. Counsel, would you like to reserve the rest of your time for rebuttal? Oh, yes, Your Honor. Mr. Yale? Thank you, Your Honor. May it please the Court? Just a couple of points. With respect to the original regional office decision, there's nothing in that decision that talks about the basis being this testimony. But there's nothing that says the basis was the APO code either. Well, but it refers to the service records, and it says, quote, verification of Vietnam service, and that's from the service records. Wait, where does it do that? Show me that. Sure. It's on 1554, 1555. So when it talks sort of under evidence on 1554, it refers to service treatment records from April of 1969 to May of 1995, and it says, including verification of Vietnam service. So a few months after that, the regional office looked at that, looked at the decision, and what that was based on was this. So his testimony is not what they based the original decision on. Correct. And also, there were fact findings about what that basis was in any event. This Court doesn't have jurisdiction to overturn those facts. Fact findings about what basis, by who, where? By the board. The board went through and essentially said, the basis for the regional office decision was this incorrect Army post office code. Even if that is accurate, under Q, don't we have to look at the record to say, well, is there anything else? Like, suppose that. There's no doubt that the postal code was wrong. And I mean, by the way, she makes a really good point. The postal code for Hawaii in the service record is from 1974, and his assertion in his application for benefits was that he was in Vietnam in 1970. So it's kind of, the board screwed up, or the VA screwed up kind of twice in this, right? The first time they screwed up is in not realizing the postal code was Hawaii, not Vietnam, and the second screw up seems to be in not even realizing that the postal code was for a time period that wasn't the time period he was asserting he was in Vietnam for. Fair? Well, there's clearly an error here, but that's- Lots of them, actually. Well, I think there's maybe a couple of errors here. I think you can certainly excuse the fact, I think it's a little bit complicated. Personally, I did not realize that those codes would change. That is somewhat confusing. I think maybe, you know, the regional office could have been more careful. They actually figured it out pretty quickly, though. But again, here the fact finder considered this. The question I have is, the fact finder, do we look back at a Q determination, and this is a big question, not like specific to this case, but do we look back at one of these Q determinations and say, oh, well look here, the specific thing they relied on turns out not to be right? Or do we look at all the record to see if the decision they made is otherwise substantiatable by the record? Basically, do we look at the whole record to say there is nothing in this record that could have supported that conclusion? Well, under the well-established principles of Q, you have to make, the board has to go through and make an outcome determinative, I mean, that's one of the prongs of Q. So they have to excise that error and go through and determine whether or not it's actually an outcome- Based on the entire record. Based upon the entire record, which is what happened here. The only other sort of piece of evidence there was that could potentially get the benefits here based upon him having actually served in Vietnam was this testimony. The board considered it and found it to be not credible. And that's a fact-finding this court can't consider. And why did they find it not credible? Well, they found it not credible, I think, on its face. The story is an unsanctioned trip, and if- Where did they say that? Since you're saying the board made that fact-finding on its face, where did they say it? Show me, in the opinion. Sure.  So on APX-19, it says, based on a review of the evidence of record, the board finds that severance of service connection for prostate cancer was proper. A review of the veteran's service personnel records does not indicate he had any Vietnam service, despite his contentions. The veteran's testimony that he got smuggled on a plane going to Vietnam without orders is without probative value. There's no objective evidence documenting this alleged incident. They didn't say it's absurd on its face. They said there's no objective evidence documenting it, right? Isn't the reason- Well, it says, quote, the complete absence of any of this evidence totally undercuts the veteran's testimony. Right, that's not that it's absurd, it's that there's no evidence to support it, and I think that, unless I'm mistaken, they're suggesting that there should have been evidence of this. Right, there should have been evidence. The board finds that there would have been at least some objective evidence. So the board's fact-finding about why his testimony is not credible is that there isn't any evidence to support it, and this is the type of assertion for which you would expect to see supporting evidence, correct? Correct. So it's not that his assertion is absurd on its face. Is that fair? I mean, do you read this as saying it's absurd on its face, or do you read it as saying it's the kind of assertion for which there would be evidence? Well, I agree with you that what they're saying here is it is- there would have been evidence of record, documentary evidence, if this actually occurred. The Veterans Court also calls it unsanctioned, but again, this is perfectly in keeping with this court's jurisprudence with respect to lay testimony. The board here has laid a foundation, in accordance with Buchanan and other cases of this court, as to why there would be that evidence. And it's not simply- the board is not simply making a blanket statement that, you know, essentially there absolutely will always have to be corroborating documentary evidence for every piece of evidence. But this story, this smuggling on the plane, and leaving and going back to Fort Lewis, Washington, this unsanctioned trip, would be the sort of- you know, that would be something where there would be some service record. And that's perfectly reasonable on its face. It just passes the common sense test. Can I just ask you a side question that has nothing to do with this case, but my curiosity is just overwhelming? If, in fact, he had made this trip, it was an unsanctioned trip, it wasn't in connection with service, he was in Vietnam overnight and then went back, would that have been- if that were correct and true, would that be sufficient basis to establish a connection to Agent Orange? It's a very good question. I think there's a legitimate question as to whether or not that constitutes, quote, service in Vietnam, because it would not be in the line of duty. So it separates that from the cases where, you know, I think there's cases where somebody's transiting to Thailand, and they stop for three hours at one of the bases in Vietnam. But that is sanctioned by the military. There's orders to do that. Here, there were no orders, and I think the acknowledgement- Like if somebody took a vacation to Vietnam. Yes, I decided to go to Vietnam. Somebody was stationed in Germany and decides to smuggle themselves on a military plane, and nobody knows he's going, and nobody ordered him to be there. Right, so that would be without orders. It's unsanctioned. I don't think it- I think there's a legitimate argument that does not constitute service in Vietnam under the statute. Here, the board did not address that, and the Veterans Court did not address that. And they didn't use that as an alternative. So that's certainly potentially an alternative basis, but that's not what was found here. And we think that just based upon the Q regulation, the board's- the board and the Veterans Court's determination are in accordance with the law. And do you understand and appreciate your friend's argument with respect to why the burden- the burden that they- they shifted the burden, and even though they said the right things, they did something different? I can't really don't understand that. That's not based upon anything in the Veterans Court's decision or the board's decision, because they went through and they identified what the correct standards were, who had the burden of proof, which was the government. And essentially what the board did was find that with respect to sort of the key element of Q here, which is whether or not the error was outcome determinative, the board found that it was outcome determinative. And they did that by going through and reviewing and considering the only piece of evidence that was left, which is this testimony, rejecting it as not credible. And so I don't understand the flipping of the burden in that sense. So I don't really understand that. But I'm not sure how from what the board and the Veterans Court said you could get to that point based upon this record and these decisions. What if the Veterans Court made a fact finding that the board didn't make and that that was a predicate for their decision in this case? Would that be a problem? Well, I mean, I think under cases like Tadlock, the Veterans Court is not supposed to make fact finding in the first instance. Again, I candidly don't know what the fact finding that the Veterans Court actually made here. Here, the Veterans Court certainly rejected arguments. Why don't we look at the Veterans Court decision at page JA6? This appears to be a fact finding, doesn't it, at the top here, that the veteran's 2012 testimony is in conflict with his 2018 testimony, and that is a basis for finding his testimony not credible. Respectfully, what the Veterans Court is doing here is there is an argument that under Q, one of the things that the Veterans Court is doing under one of the elements of Q, you can't re-weigh, Q can't just be based upon a re-weighing of the evidence of record at the time. And so that was an argument that was presented to the Veterans Court that there was a re-weighing taking place here. All the Veterans Court doing here is saying that can't be the case that there's re-weighing because this, from the original, essentially the argument that was presented to the Veterans Court was there was a re-weighing from that initial decision, and that can't be a basis for Q. So here, the Veterans Court's just rejecting that argument because it's saying, well, here is actually new testimony because there was a board hearing here. I'm confused. I guess I'm not really following your logic. In this paragraph, it says, right, because the 2018 testimony modified or contradicted his earlier lay statements, the board's consideration of that testimony could not have been a mere re-weighing. I don't see where the board itself made any fact findings to suggest that the two different sets of testimony were in conflict with each other. That is a fact finding. That is a fact finding, unequivocally. Well, respectfully, I don't see how that's a fact finding. There is a legal argument for... You don't see how it's a fact finding for me to say that your testimony in 2012 is different from your testimony in 2018? You don't think that's a fact finding? I don't think it's a fact finding in the context that the argument being raised was there was a re-weighing of the evidence. And what the Veterans Court is pointing out is this is evidence from this additional board hearing. So usually in Q cases, what you're limited to, unlike this affirmative Q case with the regulation, is the original record. Is it a fact finding when you say somebody's testimony is inconsistent and you give the reasons why you think it's inconsistent? Is that a fact finding? I mean, I think in the context of this argument, that's not a fact finding. Do you think it's a legal determination? Because there are only two choices. Yeah, I think it's a legal... It's a determination by the Veterans Court that it's a legal determination that this doesn't qualify as re-weighing of the evidence that would be potentially an issue for Q. And so I think... Okay, your argument right now, not credible. But that's a legal determination, so I get to make it, right? I mean, again, okay, if that's... I mean, that can be... I've given sort of the explanation that we have for that. I'd also say that here, there's no other... With respect to the actual error of Q, it was this APO address, and that was the error here. So whether or not this particular... these other statements from the board hearing are coming in... Okay, I think the Veterans Court exceeded its authority and made fact findings. But let me tell you why that doesn't prevail, and it's not for your reason that it's somehow magically a question of law. It's because the paragraph begins moreover, and they already decided on the prior paragraph that based on the lack of documentary evidence, the case is over. And the next paragraph is a moreover. And then I think they did something wrong. I think they went on to make fact findings that they had no business making. But since it begins with moreover, and they'd already reached a conclusion on the prior page, I think I can disregard that fact finding. Well, I mean, I think you can, too. I think we don't necessarily agree with that, but... You don't agree with what I just said about disregarding it? I don't agree with it's a fact finding under this court's precedent, but I agree that you can disregard that based upon the prior paragraphs. Anything further? If there's any further, we just ask that the court affirm the decision of the Veterans Court. Will do. Got it. Okay. Is it Ms. Shannon or Ms. Shannon-Healy? I realized I... I'm sorry. It's Ms. Healy.  Yes. Okay. It carried over onto a second line. Sorry. I got your name wrong last time. I apologize for that. I have two middle names. It gets confusing. I need these. The Veterans Court in Horne v. Shinseki said when assessing a claim, the board may consider the absence of evidence, the substantive and negative evidence, but the absence of evidence is insufficient to meet the Q standard when the burden of proof is on the VA. The absence of evidence is not negative evidence. So the court had to... The 2012 VA, the board, and the court all had to have considered his testimony. And we argued that the court actually made three... Well, this is a little different here. It's not just the absence of evidence. There was an explanation. You may be correct if they had said nothing other than, well, he says it, but he hasn't proven it. But they did talk about and confirm that the normal practice would have been that there would have been some documentation. So it's not simply the absence of evidence. It's the absence of evidence when there's, following regular order, there's reasons that there would have been evidence on the record. So it's a little more than what you're characterizing it as, I think. Right? Yes, Your Honor. But the question here has to be whether he had a reasonable... whether he could have been service-connected even if we get rid of this erroneous Q code. And you have to... The VA and the government has the burden of proving that that wasn't the case. And in rebutting it... I'm sorry, in questioning his testimony without specifically rebutting it isn't the same. And then my other point is we actually found three separate errors of... Sorry, for three separate times when the court made instant findings of fact in the first instance. And we think they actually relied on it. And so the error that you were talking about, Your Honor, his testimony didn't contradict it. The board said it reiterated it. I think his testimony was contradictory in exactly the way the Veterans Court did. But I don't get to make that decision. They don't get to make that decision. And I do think since the whole section begins with the moreover and they'd already reached a conclusion that the absence of documentary evidence where you would expect there to be some is a sufficient reason to find him not credible. I mean, I don't see how that moreover fact-finding actually matters. It's like if the court finds there are two independent reasons to do something. But the Veterans Court shouldn't do that. They shouldn't make those kinds of fact findings. Yes, Your Honor. We ask that the court set aside, reverse, and remand Mr. Jones' claim back to the VA for them to restore his benefits. Thank you, counsel. I thank both counsel. The case is taken under submission.